UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARGARET MUSOKE,<br><br>           Plaintiff,<br><br>   v.<br><br>KEYBANK NATIONAL ASSOCIATION, et al.,<br><br>           Defendants. | C12-1153 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a renewed motion for summary judgment brought by defendant KeyBank National Association ("KeyBank"), docket no. 43.  Having reviewed all papers filed in support of, and in opposition to, KeyBank's motion, the Court GRANTS the motion in part and DENIES the motion in part for the reasons set forth in this Order.

**Background**

When plaintiff Margaret Musoke initiated this action, she was represented by counsel, who prepared a complaint alleging the following seven causes of action: (i) racial and ethnic discrimination in violation of the Washington Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964, as amended in

ORDER - 1

1991 ("Title VII"); (ii) retaliation in violation of the WLAD, Title VII, and 42 U.S.C. § 1981; (iii) interference with Family and Medical Leave Act ("FMLA") rights; (iv) discrimination for requesting FMLA rights; (v) wrongful discharge in violation of Washington public policy; (vi) interference with Washington Family Leave Act ("WFLA") rights; and (vii) discrimination for requesting WFLA rights.  After plaintiff's attorney propounded discovery requests to KeyBank, he was granted leave to withdraw as counsel of record, and plaintiff thereafter proceeded pro se.  *See* Minute Order (docket no. 10); Minute Order (docket no. 27).  KeyBank was directed to provide to plaintiff the discovery responses previously served on her former counsel, *see* Minute Order (docket no. 27), and was subsequently instructed to disclose Performance Improvement Plans ("PIPs") for certain individuals for the period January 1, 2009, to June 25, 2010, *see* Minute Order (docket no. 55).  When the PIPs were ordered to be produced, KeyBank's renewed motion for summary judgment was renoted, and a deadline was set for plaintiff to file a supplemental response.  *Id.*  No supplemental response was timely filed by plaintiff.

      KeyBank uses a four-step PIP process to correct the performance deficiencies or address the inappropriate behavior of employees.  *See* Ex. 7 to McDougal Decl. (docket no. 44-1 at 35).  The four steps consist of:  (i) a first level PIP; (ii) a second level PIP; (iii) a final PIP; and (iv) termination.  *Id.*  The process may be modified based on the situation, and it may be accelerated in cases of severe performance problems or serious violations of policy or procedure.  *Id.* (docket no. 44-1 at 35-36).  In such instances, a

ORDER - 2

1  next level PIP (or termination) might be administered before the current PIP expires or
2  one or more PIP steps might be bypassed.  *Id.*
3        Plaintiff was employed by KeyBank from May 1998 until August 2000, and from
4  March 2004 until June 25, 2010.  On November 3, 2009, plaintiff received an accelerated
5  second level PIP identifying the following concerns:  (i) unprofessional conduct and
6  insubordination; (ii) absence from required meetings; (iii) investment advice provided
7  without a license; and (iv) improper handling of a recruitment situation.  Ex. 12 to
8  McDougal Decl. (docket no. 44-1 at 47-49).  On January 14, 2010, plaintiff received a
9  final PIP describing a "continued . . . trend of unsatisfactory performance," including:
10 (i) improper communications to staff and clients about the anticipated North Creek
11 branch closure; (ii) another absence from a mandatory meeting; (iii) a change in work
12 schedule without prior approval; (iv) late submittal of timecards; and (v) failure to secure
13 adequate coverage, leaving an employee in a position for which she had not received
14 training.  Ex. 14 to McDougal Decl. (docket no. 44-1 at 54-56).  The final PIP had an
15 expiration date of March 14, 2010.  On June 25, 2010, after a loan underwriter had
16 complained about plaintiff's unprofessional behavior, plaintiff was terminated.  *See*
17 Exs. 16 & 17 to McDougal Decl. (docket no. 44-1 at 61-63 & 65-66).  According to a
18 memorandum prepared by Senior Employee Relations Consultant Carolyn Nedredd,
19 plaintiff became so agitated during the meeting in which she was terminated that police
20 were summoned to the Silver Lake branch in Everett.  Ex. 16 (docket no. 44-1 at 62-63).
21
22
23
ORDER - 3

Plaintiff is African American, having immigrated from Uganda.  Pla. Resp. at p. 1, ¶ 1 (docket no. 45).[1]  She alleges that, during her tenure at KeyBank, her manager, Darcy Burns-Jelcz, delegated to her duties that she could not perform because she did not have the necessary authority or access.  Id. at p. 2, ¶ 5.  Plaintiff further alleges that was advised "never to coach Caucasian staff without Christine Hadley present," id. at p. 5, ¶ 2, and that Burns-Jelcz directed her "not [to] hold Caucasian staff accountable to their work, dress code, respect, code of ethics, misconduct, teamwork, and insubordination in reference to the job they were hired to do," id. at p. 8.  According to plaintiff, if a Caucasian employee was held accountable, Burns-Jelcz "came in as a 'protector' to encourage them not to respect [plaintiff] or to do their work but instead chat with [Burns-Jelcz] to get promotions, recognition and pay raises."  Id.

Plaintiff indicates that she was on full-time FMLA/WFLA leave from November 4, 2009, to November 7, 2009, half-time FLMA/WFLA leave from November 9, 2009, to December 22, 2009, and full-time FLMA/WFLA leave from December 23, 2009, to January 13, 2010.  Id. at pp. 2-3, ¶ 8.  She alleges that, while she was on FMLA/WFLA leave, she was called to the work site, and that, when she returned from leave on January 14, 2010, she received a written warning for not performing Burns-Jelcz's duties while she had been on leave.  Id.  Plaintiff also indicates that other employees habitually missed

---

[1] Although plaintiff's response, docket no. 45, to KeyBank's motion for summary judgment is not attested under penalty of perjury, the Court treats it as satisfying Federal Rule of Civil Procedure 56(c)(4) because it is in the form of a declaration, it sets forth matters about which plaintiff has personal knowledge and could testify at trial, and plaintiff, by filing it pro se, has made the representations outlined in Federal Rule of Civil Procedure 11(b).  See Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

ORDER - 4

the mandatory morning conference calls but were not disciplined as she was. *Id.* at pp. 17-18. Plaintiff further disputes the accounts of others present at the termination meeting held on June 25, 2010. *Id.* at p. 23.

**Discussion**

To establish a prima facie case of disparate treatment in the employment context, a plaintiff must show that the employer treats some people less favorably than others on account of their protected status. *Alonso v. Qwest Commc'ns Co.*, 315 P.3d 610, 616 (Wash. Ct. App. 2013); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). A plaintiff may do so by either (i) offering direct evidence of an employer's discriminatory intent, or (ii) satisfying the three-part burden-shifting standard first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alonso*, 315 P.3d at 616; *see Swierkiewicz*, 534 U.S. at 511 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.")). In this case, plaintiff proffers direct evidence of a discriminatory motive, *see Fulton v. Wash. Dep't of Soc. & Health Servs.*, 279 P.3d 500, 507 n.17 (Wash. Ct. App. 2012) (observing that direct evidence "includes discriminatory statements by a decision maker"), and thus, although KeyBank articulates legitimate, non-discriminatory reasons for terminating plaintiff, which have strong support in the record, the Court cannot conclude that no genuine issue of material fact exists or that KeyBank is entitled to judgment as a matter of law with regard to plaintiff's claims of discrimination and retaliation relating to race and national origin. *See* Fed. R. Civ. P. 56(a).

ORDER - 5

The Court draws a similar conclusion with respect to plaintiff's claims under the federal and state family and medical leave acts.  Both statutes prohibit an employer from interfering with or restraining the exercise of the rights granted thereby.  <u>See</u> 29 U.S.C. § 2615(a)(1); RCW 49.78.300(1)(a); <u>see also</u> <u>Bachelder v. Am. W. Airlines, Inc.</u>, 259 F.3d 1112, 1122-23 (9th Cir. 2001); <u>Crawford v. JP Morgan Chase NA</u>, -- F. Supp. 2d --, 2013 WL 4670639 at *6 (W.D. Wash. Aug. 30, 2013) (indicating that the <u>McDonnell Douglas</u> burden-shift framework does not apply to FMLA interference claims).  Plaintiff has come forward with enough evidence to present genuine issues of material fact as to whether KeyBank interfered with her exercise of FMLA/WFLA rights and whether her use of FMLA/WFLA leave was improperly used as a factor in her termination.  <u>See</u> Fed. R. Civ. P. 56(a).

With regard, however, to plaintiff's claim of wrongful discharge in violation of public policy, the Court GRANTS KeyBank's motion for summary judgment.  Because current laws, namely the WLAD, Title VII, § 1981, the FMLA, and the WLFA, provide "an adequate means of promoting the public policies" of discouraging racial and national origin based discrimination and protecting an employee's ability to take leave from work to address family issues, plaintiff may not assert a separate claim for wrongful discharge in violation of public policy.  <u>Cudney v. ALSCO, Inc.</u>, 259 P.3d 244, 246-47 (Wash. 2011).

**Conclusion**

For the foregoing reasons, KeyBank's motion for summary judgment, docket no. 43, is GRANTED in part and DENIED in part.  With regard to plaintiff's claim of

ORDER - 6

1  wrongful discharge in violation of public policy, KeyBank's motion is GRANTED, and

2  such claim is DISMISSED with prejudice.  KeyBank's motion is otherwise DENIED.

3  The parties are DIRECTED to file a Joint Status Report within twenty-eight (28) days of

4  the date of this Order indicating when they anticipate being prepared for trial in this

5  matter.  In the Joint Status Report, the parties shall also address whether the Court should

6  appoint counsel for plaintiff pursuant to 28 U.S.C. § 1915(e)(1).

7           Dated this 11th day of March, 2014.

                                        *[signature]*
                                        Thomas S. Zilly
                                        United States District Judge

ORDER - 7